### John L. Bond *vs.* Mark Fay.

If a deed of land, in describing the granted premises, after naming a certain monument, adds, " thence running southerly by land improved by A. to the road," and a straight line to the road, running a little east of south, will include the land improved by A. in the granted premises, while a line running a little south of west, to the corner of the land improved by A., and thence along the line of said land a little east of south to the road, at a point nearly south of the monument, will exclude said land from the granted premises, the latter construction is to be adopted as the true one.

WRIT OF ENTRY to recover a parcel of land in Marlborough. At the trial in the superior court, before *Ames,* J., without a jury, the demandant claimed title under a deed to him from the tenant, in which the description of the granted premises was as follows : Beginning " on the north side of the county road, at land of William Stratton ; thence by said Stratton's land to a

brook at land of William Felton; thence by said brook to the fence at land of Edward Rice; thence easterly by said Rice's to a walnut tree at land of Sarah Bond; thence southerly by said Bond's land to land of Moses Howe, Jr.; thence westerly by said Howe's land, and land improved by Rodney and Gridley Putney, to the corner of the wall; thence southerly by land improved by Gridley Putney to said road; thence westerly by said road to the bounds first mentioned." The following plan exhibits the material portion of the boundaries.

Bond v. Fay.

The question at issue between the parties was, whether the line from the walnut tree should be so run as to include or exclude the demanded premises. It was agreed that a line following the solid line on the plan would come to the corner of a wall, standing at the date of the deed, which corner the demandant claimed to be the one named in the deed.

It appeared that at the date of the deed no land was improved by Rodney and Gridley Putney jointly, but that the land lying east of the demanded premises was occupied by Rodney alone, and that Gridley boarded with him and worked with him upon the same. The demanded premises were then owned by the tenant, and improved by Gridley Putney.

The tenant contended that the true line should run according to the heavily dotted lines upon the plan, and offered parol evidence to show that this was the intention of the parties; and the demandant contended that it should be according to the lightly dotted line. The judge ruled that the corner of the wall, as shown upon the plan, is to be considered as the monument called for by the deed, although not reached by a line running by land improved by Gridley Putney; and that the deed includes the demanded premises. He also excluded the offered evidence, and found for the demandant. The tenant alleged exceptions.

*T. H. Sweetser & W. S. Gardner*, for the tenant, cited, upon the construction of the deed, *Newhall v. Ireson*, 8 Cush. 598; *Frost v. Spaulding*, 19 Pick. 447; *Worthington v. Hylyer*, 4 Mass. 204; *Haynes v. Young*, 36 Maine, 557; *Loring v. Norton*, 8 Greenl. 68; 1 Greenl. Ev. § 301, *n.*; and on the question of evidence, *Bosworth v. Sturtevant*, 2 Cush. 392; *Stone v. Clark*, 1 Met. 378; 4 Cruise Dig. (Greenl. ed.) tit. xxxii. c. 21, § 31, *n.*

*D. S. Richardson*, for the demandant, cited, upon the construction of the deed, *Parks v. Loomis*, 6 Gray, 472; *Bosworth v. Sturtevant*, 2 Cush. 392; and on the question of evidence, *Dawes v. Prentice*, 16 Pick. 435; *Jenks v. Morgan*, 6 Gray, 448.

HOAR, J. The corner of the wall, which is a monument called for by the deed, having been found at the trial, and its position satisfactorily determined, the presiding judge was right

in holding it decisive upon the question of boundary.   There was no controversy as to the point where the line first reached the land of Moses Howe, Jr.   From that point the deed gives it as running "westerly by said Howe's land, and land improved by Rodney and Gridley Putney, to the corner of the wall." There was no land "improved" by Rodney and Gridley Put- ney jointly; and the land by which the line must pass to reach the corner of the wall was "improved" by Rodney Putney alone, if the word "improved" is understood as meaning "oc- cupied" or "held."   But the monument being found, and there being no land answering the description in the deed by which the line could run to the monument, this part of the description must be rejected as erroneous, and the line treated as running to the monument by such land as is there found, though not precisely corresponding to the description.

But the facts reported tend very strongly to show why the land was described as being "improved" by Rodney and Grid- ley Putney.   The word "improved" is not a technical word, having a precise legal meaning.   Indeed, there is no very good authority for its use in the sense in which it is not unfrequently employed in familiar speech.   It seems quite probable that, Gridley Putney living with his brother Rodney, and working with him upon the land, it was supposed that their possession of it was a joint possession; or that the conveyancer may have supposed that their connection with the land might be well enough expressed by the word "improved."

When we follow the line from the corner of the wall, the con- struction given to the deed at the trial does not appear to us to have been correct.   The line is to run southerly by land im- proved by Gridley Putney to the road.   The point of starting is fixed, and the road at which the line terminates is also ascer- tained.   The line claimed by the demandant is a single line, and its direction is southerly, though inclining considerably to the east.   So far it would correspond well enough with the line required, and it was adopted by the court.   But the line should pass "by land improved by Gridley Putney."   This land is found, and is a monument which cannot therefore be

disregarded. The demandant's line includes this land within the tract conveyed. On the other hand, the line for which the tenant contends bounds upon this land, leaving it out of the piece conveyed. This corresponds with the common use of a boundary in a conveyance, and with the position of all the other lands referred to in the deed. It would be very unusual to say that a line bounded upon land described, when it would include it; and we cannot adopt such a construction, unless it becomes necessary to make the deed intelligible. The tenant's line terminates at the road very nearly south of the corner of the wall. To reach its terminus it goes first southwest, and then southeast, but the whole result is a southern course, and it follows the monument of the " land improved by Gridley Putney," excluding it from the conveyance. According to the ordinary rule, the monument must have a controlling effect, though it may induce some change in the course. Two other considerations favor the adoption of this line. First, in the earlier part of the description, the line from Moses Howe's land to the corner of the wall is in like manner spoken of as if it were a single line, and drawn westerly; while it is found to make two angles, beginning southwesterly, thence turning southerly, and thence again southwesterly. This would show that the conveyancer did not necessarily intend that a line which he described as passing in a general direction from one point to another should be a straight line. And secondly, the change in the description of the land which comes after passing the corner of the wall, from that which preceded it, shows that land in a different occupation was intended. For these reasons, we are of opinion that the line for which the tenant contended was the true line called for by the deed, and that there must be a new trial.

*Exceptions sustained.*